UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 13-222-DLB-HAI**

**AUTO-OWNERS INSURANCE COMPANY, et al.**                    **PLAINTIFFS**

**V.**                  <u>**MEMORANDUM OPINION AND ORDER**</u>

**J.C. EGNEW, et al.**                                                                  **DEFENDANTS**

\*\*\*    \*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiffs Auto-Owners Insurance Company ("Auto-Owners") and Owners Insurance Company ("Owners") brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, against Defendants J.C. Egnew, Azalie Egnew, Lloyd Moncrief, Linda Moncrief, Kentucky Highlands Investment Corporation, Kentucky Highlands Development Corporation, Outdoor Venture Corporation d/b/a Stearns Manufacturing, Stearns Manufacturing, LLC (collectively "Insured Defendants"), LEEP, Inc. d/b/a LEEP, Inc. of Kentucky, and Roger L. Blanken. Auto-Owners and Owners seek a declaration that they have no obligation to defend or indemnify Insured Defendants in three underlying lawsuits filed by LEEP, Inc. ("LEEP") and Roger L. Blanken ("Blanken"). (Doc. # 1). In response, Insured Defendants filed a Counterclaim against Auto-Owners and Owners (Doc. # 23) and Third Party Complaints against Grange Mutual Casualty Company, Philadelphia Indemnity Insurance Company, and Scottsdale Indemnity Company (collectively "Third Party Defendants"). (Docs. # 40, 41, and 45).

There are currently seven motions for summary judgment before the Court, which are fully briefed and ripe for review. (Docs. # 88, 89, 90, 91, 92, 93, 94, 97, 98, 99, 100, 101, 102, 103, 104, and 105).  However, before reaching the substantive issues in this case, the Court must consider whether to exercise its discretionary jurisdiction under the Declaratory Judgment Act ("Section 2201").  Having carefully considered the issues in this case, and for the reasons set forth below, the Court finds it appropriate to decline jurisdiction in this case pursuant to Section 2201.  Accordingly, Auto-Owners' and Owners' Complaint, as well as Insured Defendants' Counterclaims and Third-Party Complaints, are dismissed without prejudice.[1]

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The same facts giving rise to this action have spawned three other lawsuits - one also currently pending in this Court,[2] one in the Jefferson County, Kentucky Circuit Court,[3] and another, formerly before the Middle District of Pennsylvania, which was dismissed with prejudice by this Court.[4]  The common denominator between these four lawsuits are Insured Defendants.  In short, Insured Defendants are alleged to have engaged in underhanded negotiations and deceptive business transactions, for which they are now

---

[1] Auto-Owners' and Owners' declaratory judgment action is before this Court pursuant to jurisdiction granted by the Declaratory Judgment Act, 28 U.S.C. § 2201.  Insured Defendants' Counterclaims and Third Party Complaints rely on this Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3)(providing that the district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.)  Accordingly, Insured Defendants' Third Party Complaints, which are before this Court only because of the original action, are dismissed.

[2] *Blanken v. Ky. Highlands, et al.*, 6:13-CV-47 (E.D. Ky.).

[3] *LEEP, Inc. v. Outdoor Venture Corp., et al.*, 13-CI-86 (Jefferson County Circuit Court).

[4] *Blanken v. Ky. Highlands, et al.*, 4:14-CV-428 (M.D. Pa.); 6:14-CV-202 (E.D. Ky.).

facing the possibility of contractual, statutory, and tortious liability.

Insured Defendants' allegedly wrongful conduct began in 2011, when Outdoor Venture Corporation ("OVC") and LEEP engaged in proposed joint venture negotiations. As part of these negotiations, confidential information was exchanged and the parties allegedly entered into a Non-Disclosure Agreement. (Doc. # 1-2, Ex. "A"). In the Fall of 2012, negotiations broke down. *Id.* The proposed joint venture did not come to fruition. *Id.* Shortly thereafter, Kentucky Highlands Investment Corporation ("Kentucky Highlands") purchased LEEP's debt - a note owned by Fortress Credit Corporation ("Fortress"), which secured a debt in the amount of approximately seven-million dollars ($7,000,000.00). *Id.* After acquiring the note, Kentucky Highlands notified LEEP of LEEP's default on the note and their intent to take possession and dispose of LEEP's assets, which secured the debt. *Id.* Once Kentucky Highlands repossessed LEEP's assets, they sold those assets to Stearns Manufacturing, LLC ("Stearns"). *Id.* Stearns subsequently sold the repossessed assets to its sole member, OVC. (Doc. # 40; Doc. #77, Stipulation, page ID # 966). After Stearns transferred all assets to OVC, Stearns was dissolved (a mere 122 days after the company's formation). (Doc. # 77, Stipulation, page ID # 966; Doc. # 89-5, Ex. "D," Egnew Depo., pp. 102-103). These alleged actions triggered four lawsuits - three alleging various torts against Insured Defendants, and this insurance coverage dispute.

    **1.    Underlying Litigation**

        **a.    *LEEP, Inc. v. Outdoor Venture Corp., et al.*, 13-CI-86, Jefferson County Circuit Court**

On January 7, 2013, LEEP filed a Complaint in the Jefferson County Circuit Court

against Insured Defendants. (Doc. # 1-1, Ex. "A").[5] LEEP brings seventeen (17) claims against J.C. Egnew, Lloyd Moncrief, Kentucky Highlands, OVC, and Stearns, including: breach of contract, breach of oral contract, fraud, tortious interference with contract between Fortress and LEEP, tortious interference with LEEP/Salzer GMBH contract, conversion, declaration of rights, tortious interference with contract between LEEP and Blanken, tortious interference with prospective business advantage, breach of fiduciary duty, defamation, intentional conduct for punitive damages, tortious interference with contract between LEEP and SC Fundamental, injunctive relief, attorney's fees, violation of RICO, and violation of the Kentucky Uniform Trade Secrets Act (Ky. Rev. Stat. Ann. § 365.900). *Id.* Specifically, LEEP claims that Insured Defendants "conspired, planned, organized, and schemed to force LEEP out of business and to take over LEEP's business by virtue of obtaining LEEP's confidential information and then purchasing the Fortress note." *Id.* at ¶ 94. As a result of these alleged wrongful acts, LEEP seeks compensatory damages, attorney's fees, punitive damages, treble damages, a declaration of rights, and injunctive relief. *Id.* at pp. 39-40.

      **b.** ***Blanken v. Ky. Highlands, et al.*, 0:13-CV-47, Eastern District of Ky.**

On March 6, 2013, Blanken filed a Verified Complaint against Kentucky Highlands, OVC, and Stearns seeking a declaration of rights, alleging the wrongful seizure and conversion of his property from LEEP's facility in Pennsylvania, and claiming Insured Defendants had tortiously interfered with the contract between him and LEEP. (Doc. # 1-3, Ex. "B"). Blanken seeks $1,042,000.00 in compensatory damages and $1,000,000.00 for

---

[5] LEEP amended their Complaint on October 4, 2013. (Doc. # 1-2, Ex. "A").

lost profits, attorney's fees, and punitive damages for intentional conduct. *Id.* Blanken's lawsuit is currently pending before this Court, pursuant to its diversity jurisdiction, 28 U.S.C. § 1332.

### c. *Blanken v. Ky. Highlands, et al.*, 4:14-CV-428, Middle District of Pa.; 6:14-CV-202, Eastern District of Ky.

On February 25, 2014, Blanken filed a Complaint in the Court of Common Pleas of Lyoming County, Pennsylvania, against Kentucky Highlands, OVC, and Stearns based on the repossession and subsequent sale of certain inventory. (Doc. # 40). Specifically, Blanken requested a declaration of rights, and damages for conversion and replevin of inventory. The case was subsequently removed to federal court and then transferred from the Middle District of Pennsylvania to the Eastern District of Kentucky as Civil Action No. 6:14-CV-202. (Doc. # 93). On February 25, 2015, this lawsuit was dismissed with prejudice and stricken from the Court's active docket upon a Stipulation of Dismissal filed by the Plaintiff, with the consent of all Defendants. (6:14-CV-202, Doc. # 31).

### 2. This Insurance Coverage Dispute

Auto-Owners and Owners ask the Court to determine their rights with respect to eight commercial and personal insurance policies issued to Insured Defendants. Specifically, they ask the Court to declare that "they are not required to either indemnify and/or provide a defense" in the LEEP Lawsuit in Jefferson County Circuit Court or in the Blanken action before this Court. (Doc. #1, pp. 21-22).

The Insured Defendants have filed a Counterclaim, asking the Court to draw the opposite conclusion - that both Auto-Owners and Owners have a duty to defend and indemnify the Insured Defendants. (Doc. # 23). In addition, Insured Defendants ask this

5

Court for reimbursement of costs and a declaration that "Insured Defendants are entitled to a completely independent defense of the claims, through the counsel they have selected, paid for by Plaintiffs" because Plaintiffs are defending Insured Defendants under a reservation of rights. *Id.*

The Insured Defendants have also filed Third Party Complaints against Philadelphia Indemnity Insurance Company, Grange Mutual Casualty Company, and Scottsdale Indemnity Company, alleging the insurance companies have breached their insurance contracts with the Insured Defendants. Additionally, they seek a declaration that each Third Party Defendant owes a defense and indemnification to Insured Defendants for the claims asserted in the LEEP Complaint and both Blanken Complaints. (Docs. # 40, 41, and 45). In addition, Insured Defendants assert an Unfair Claims Settlement Practices claim against Philadelphia Indemnity Insurance Company, arguing that Philadelphia's conduct upon notification of the claims against Insured Defendants amounted to unfair claims settlement practices. (Doc. # 41).

## II. ANALYSIS

### 1. Standard of Review

The Declaratory Judgment act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Act affords "unique and substantial discretion" in deciding whether to provide declaratory relief. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Therefore, federal courts are "under no compulsion to exercise jurisdiction." *Brillhart v.*

*Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).  However, the Sixth Circuit has identified five factors, known as the *Grand Trunk* Factors, for district courts to consider when deciding whether to exercise jurisdiction under Section 2201:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*;

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

The five factors outlined above were formulated with three guiding principles in mind: "efficiency, fairness, and federalism." *Western World Ins. Co. v. Hoey, et al.*, 773 F.3d 755, 759 (6th Cir. 2014).  While courts should balance each factor, the Sixth Circuit has concluded that the factors are not equally weighted and their "relative weight" depends heavily on the "underlying considerations of efficiency, fairness, and federalism,"which will vary depending on the circumstances of each case. *Id*.  As illustrated by the Sixth Circuit in *Hoey*, "a relatively efficient declaratory judgment (factors 1, 2, and 5) could very well be inappropriate if hearing the case would be unfair (factor 3) or would offend the bundle of principles we generally label 'federalism' (factor 4)." *Id*.  Therefore, "the essential question is always whether a district court has taken a good look at the issue and engaged in a reasonable analysis of whether issuing a declaration would be useful and fair." *Id*.

### 2. *Grand Trunk* Factors

#### a. *Will the declaratory action settle the controversy?*

There is a split in authority within the Sixth Circuit regarding the first factor. One line of cases holds that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Scottsdale*, 513 F.3d at 555 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987)). A separate line of cases concluded the opposite; that "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004)).

The inconsistency in these decisions can be reconciled by considering their distinct factual differences. In *Northland*, "the plaintiff was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id.* at 556 (internal quotations omitted). On the other hand, "the insurance coverage controversy" in *Bituminous* "rested on a fact-based question of state law regarding whether the plaintiff in the estate action was actually an employee of the defendant," which was already being considered in two separate state court proceedings." *Id.* at 555-56.

The present case bears resemblance to both *Northland* and *Bituminous*. As in *Northland*, the parties who brought this declaratory judgment action, Auto-Owners and

8

Owners, are not named in the underlying state court matter. Thus, the insurance coverage dispute is not directly at issue in the LEEP Lawsuit before the Jefferson County Circuit Court. However, this finding alone does not require a conclusion that the requested declaratory relief would settle the controversy. Consistent with the *Bituminous* line of precedent, this Court must also examine whether the insurance coverage dispute depends on "fact-based questions of state law," and if so, whether those questions are likely to be addressed by the Jefferson County Circuit Court. To answer this question, the Court must review the coverage dispute and policy provisions in question.

Both Auto-Owners' and Owners' commercial liability, commercial umbrella, and business owners' policies pledge to cover amounts that the insured "becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' or 'personal injury,' 'advertising injury' to which this insurance applies..." (Doc. # 89-1, pp. 13-14; Doc. # 91, pp. 11-14). However, coverage applies only if the "bodily injury," "property damage," "personal injury," and/or "advertising injury" "is caused by an 'occurrence.'" *Id.* Although these policies define an "occurrence" as "an accident," the term accident is left undefined. Additionally, the insurance policies include a number of other coverage requirements (meeting the definition of "property damage," occurring during the policy period, etc.) and exclusions to coverage, including the Intentional Acts Exclusion.[6]

Auto-Owners and Owners rely upon the above-cited policy provisions in arguing that they do not owe a duty to defend or indemnify Insured Defendants. Many of these arguments involve fact-based questions of state law. Specifically, Auto-Owners and

---

[6] Third Party Defendants make similar "occurrence" and Intentional Acts Exclusion arguments based on the language of their policies.

Owners argue that Insured Defendants' alleged conduct does not qualify as an "occurrence" under the policies. Even if the conduct does constitute an "occurrence," Auto-Owners and Owners maintain that coverage is barred by the Intentional Acts Exclusion.

Auto-Owners, Owners, Insured Defendants, and the Third Party Defendants all rely on *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69 (Ky. 2010), a case in which the Supreme Court of Kentucky examined the "occurrence" requirement. In *Cincinnati*, homeowner-plaintiffs brought suit against their homebuilder for faulty workmanship, alleging their house was so poorly built that it eventually had to be demolished. *Id.* at 71. The question before the court was whether such a claim qualified as an "occurrence" under the homebuilder's commercial general liability policy. *Id.* The policy at issue defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 72. Because the term "accident" was left undefined, the court relied on the "doctrine of fortuity," explaining that in order for an event to be accidental, not only must it have been unintentional from the standpoint of the insured, but it must also have been "beyond the power of any human being to bring ... to pass, ... [or] within the control of third persons." *Id.* at 76. The court found that the construction process was controlled entirely by the homebuilder and/or its subcontractors, and therefore, held that the alleged damages could not qualify as an "occurrence" under the policy. *Id.*

While *Cincinnati* and its progeny provide guidance as to the "doctrine of fortuity" and what constitutes an "occurrence," established Kentucky case law is too narrow to settle the controversy presented in this case - whether alleged underhanded business negotiations and transactions constitute an "occurrence" - as a matter of law. Therefore, whether

10

Insured Defendants' alleged conduct is an "occurrence" (*i.e.* "accidental" or "intentional" conduct) is a fact-based question of state law, and one which the Jefferson County Circuit Court will certainly be considering.

In the LEEP Lawsuit, Insured Defendants have been accused of a multitude of intentional torts, including conversion, fraud, and tortious interference. To determine whether Insured Defendants are guilty of such torts, the Jefferson County Circuit Court must consider whether Insured Defendants acted "intentionally." This inquiry has the potential to answer the question before this Court, *i.e.*, whether Insured Defendants' conduct was an "occurrence." After all, the "occurrence" analysis focuses on whether the alleged damages came about "fortuitously" or whether they resulted from a "plan, design, or intent on the part of the insured." *See Bituminous Cas. Corp. v. Kenway Contracting, Inc.*, 240 S.W.3d 639 (quoting *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 812 (Ky. Ct. App. 2000)). Furthermore, Auto-Owners' and Owners' alternative Intentional Acts Exclusion arguments would also require this Court to consider whether Insured Defendants acted intentionally. At their core, the "occurrence" and Intentional Acts Exclusion inquiries require the exact same factual findings and analysis as the intentional torts.[7]

In summary, to provide the declaratory relief that Auto-Owners and Owners request, the Court would have to determine if Insured Defendants' actions constitute an "occurrence" under the policies, which inevitably raises fact-based questions of state law,

---

[7] Although Blanken is pending before this Court, the Section 2201 analysis will focus on the LEEP Lawsuit in Jefferson County Circuit Court. Because the LEEP Lawsuit was filed in state court, it creates a considerable risk of inconsistent results, encroachment on federalism, and inefficiency. These are precisely the concerns that *Grand Trunk* is designed to address and these considerations are not diminished because of related cases pending before this Court.

namely, whether or not the conduct giving rise to the alleged damages came about fortuitously or intentionally. Given the nature of the various claims at issue in the LEEP Lawsuit, there is a strong possibility that many of these same factual questions will also be addressed by the Jefferson County Circuit Court. Therefore, consistent with the Sixth Circuit's holding in *Bituminous*, and this Court's previous application thereof,[8] the Court finds that a declaratory judgment in this matter would not settle the controversy. Accordingly, the first factor weighs against this Court exercising its jurisdiction under Section 2201.

### b. *Will the declaratory action clarify the legal relations at issue?*

A split also exists among Sixth Circuit precedent regarding the second factor. The two lines of precedent conflict over whether "the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Scottsdale*, 513 F.3d at 558. While the *Scottsdale* court did not definitively resolve this conflict, the court found "the former line of precedent to be more persuasive than the latter." *Id*. Thus, the court focused on "the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id*. The court also explained that a declaratory action need not clarify the legal relations in the underlying state litigation, so long as it does not "create any confusion about the resolution of those issues." *Id*.

---

[8] *Arrowood Indem. Co. v. Drees Co.*, 2:14-CV-169, 2015 WL 136107 (E.D. Ky. Jan. 9, 2015); *Darwin Select Ins. Co. v. King's Daughters Health Sys., Inc., et al.*, 0:14-CV-85 (E.D. Ky. Dec. 23, 2014).

In this case, the declaratory judgment action asks the Court to decide one issue: whether Auto-Owners or Owners have a contractual obligation to defend or indemnify the Insured Defendants.  The Counterclaims and Third Party Complaints seek similar findings.  Although a ruling on these insurance coverage issues would not settle the controversy, they would clarify the legal relationship between Auto-Owners, Owners, and Insured Defendants, as well as the Third Party Defendants.  Additionally, there is little or no risk that a ruling on this precise issue would be duplicated or contradicted by the state court because the insurance coverage issues are not being litigated in the LEEP Lawsuit.  Furthermore, all of the parties in the underlying matters have been joined in this action as indispensable parties. (Doc. # 1, ¶¶ 16,18).[9]  Therefore, a federal declaratory judgment regarding insurance coverage would be unlikely to confuse the legal relations of the parties involved in the underlying litigation.  For these reasons, the second factor weighs in favor of exercising jurisdiction.[10]

---

[9] However, Roger Blanken and LEEP have had very limited involvement with this particular action. *See* Doc. # 19 (Answer to Complaint by Defendant Roger L. Blanken); Doc. # 69 (Notice by Roger L. Blanken re Doc. # 63 Order for Notice of Availability); Doc. # 109 (Notice by Roger L. Blanken re Doc. # 107 Order of Availability for Settlement Conference); *see also* Doc. # 10 (Answer to Complaint by Defendant LEEP, Inc.); Doc. # 12 (FRCP 7.1 Disclosure Statement by LEEP, Inc.); Doc. # 30 (Response to Order to Show Cause by LEEP, Inc.); Doc. # 66 (Notice of Filing by LEEP, Inc. of Availability), Doc. # 108 (Notice by LEEP, Inc. of Availability for Settlement Conference).

[10] The Court recognizes that the first and second factors are closely intertwined. "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale*, 513 F.3d at 557. "Yet, it is not unheard of for the second factor to support exercising jurisdiction, while the first factor does not." *See Grange Mut. Cas. Co. v. Safeco. Ins. Co. of Am.*, 556 F. Supp.2d 779, 789 (E.D. Ky. 2008); *State Auto Ins. Co. V. Kennedy Homes, LLC*, 2:09-CV-00178, 2011 WL 65880, *4 (E.D. Ky. Jan. 10, 2011).

### c. *Is the declaratory remedy being used for the purpose of procedural fencing or to provide an arena for res judicata?*

The third factor attempts to "preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Scottsdale*, 513 F.3d at 558. However, district courts realize it would be unfair to "deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress." *Id.* Therefore, where the declaratory plaintiff files their action *after* the state court litigation has commenced, there is a presumption that the declaratory plaintiff does not have an "improper motive" which "fueled the filing of [the] action." *Id.*

Here, there is no evidence that Auto-Owners and Owners were "forum shopping." The LEEP Lawsuit began in January 2013, more than ten (10) months before Auto-Owners and Owners brought the current action. Therefore, Auto-Owners and Owners are presumed not to have brought this action for the purpose of acquiring a favorable forum. There being no evidence to suggest that Auto-Owners and Owners are using the declaratory remedy as a means for "procedural fencing," the Court finds that this third factor does not point toward denying jurisdiction.

### d. *Would a declaratory action increase friction between our federal and state courts?*

The fourth factor this Court must examine is "whether accepting jurisdiction would increase friction between federal and state courts." *Scottsdale*, 513 F.3d at 559. Although "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction," "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court,

a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed." *Id.* at 559-60 (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987), *abrogated on other grounds by Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995)). Therefore, "to determine whether the exercise of jurisdiction would increase friction between federal and state courts," the Court must consider three additional sub-factors:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale*, 513 F.3d at 560 (citing *Bituminous Cas. Co.*, 373 F.3d at 814-15).

The first sub-factor seeks to determine "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Scottsdale*, 513 F.3d at 560. In cases seeking a declaration regarding "the scope of insurance coverage," the Sixth Circuit has "recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings." *Id.* (citing *Northland*, 327 F.3d at 454; *Green*, 825 F.3d at 1067). In other cases, "resolution of the issues raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* (citing *Travelers*, 495 F.3d at 272). When cases require the federal court and state court to make similar factual findings, "the exercise of jurisdiction would be inappropriate." *Id.*

As discussed in detail in the analysis of the first factor, this case cannot be resolved as a matter of law. Instead, this Court will be required to make numerous factual findings in order to decide if the Insured Defendants' actions qualify as an "occurrence" under the policies or are excluded under the Intentional Acts Exclusion. Given the nature of the claims being litigated before the Jefferson County Circuit Court, the Court strongly believes that many of the same factual findings will be at issue in the LEEP Lawsuit. Accordingly, the first sub-factor weighs against exercising jurisdiction.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id*. "Generally, state courts are better situated than federal courts to resolve disputes over state regulated insurance contacts and novel questions of state law." *Arrowood Indem. Co.*, 2015 WL 136107, at *7 (E.D. Ky. Jan. 9, 2015) (citing *Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 815-16). "However, when the insurance company is not a party to the state action, and the scope of coverage or an obligation to defend are not before the state court, 'a decision by the district court on these issues would not offend principles of comity.'" *Id*. (citing *Scottsdale*, 513 F.3d at 50 (quoting *Northland Ins. Co.*, 327 F.3d at 454)).

Although Auto-Owners and Owners, as well as the Third Party Defendants, are not named in the LEEP Lawsuit, and insurance coverage is not an issue in that action, the second sub-factor weighs against exercising jurisdiction. Sixth Circuit precedent is clear - Kentucky courts are better situated than this Court to adjudicate matters that revolve around state regulated insurance contracts. *See Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 815-16. Given the nature of the Insured Defendants' alleged conduct, as well as the Insured Defendants' argument regarding the right to independent counsel when an

insurance company defends under a reservation of rights, the Court believes that novel questions of state law are presented and that a Kentucky state court is better situated than this Court to resolve those disputes.

Lastly, the third sub-factor asks "whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court. *Scottsdale*, 513 F.3d at 561. The Sixth Circuit has recognized that "states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id*. Therefore, insurance contract disputes typically consider "questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Id*.

As discussed above, whether Insured Defendants' conduct constitutes an "occurrence," *i.e.* whether the conduct was "intentional," will undoubtedly play a key role in shaping the outcome of this case. When relying upon the doctrine of fortuity to determine whether a claim should be covered, Kentucky courts have consistently supported their decisions with policy considerations, such as the overall purpose of commercial general liability insurance, the expectations of the insured, and the goal of discouraging negligent conduct. *See, e.g. Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74-76 (Ky. 2010) (discussing the various policy considerations at play in deciding whether or not an event should be deemed accidental); *see also Bituminous Cas. Co. v. Kenway Contracting, Inc.*, 240 S.W.3d 633, 638-30 (Ky. 2007). While this Court is certainly capable of examining and weighing such public policy considerations in this case, the Sixth Circuit's precedent unequivocally states that a Kentucky state court is better situated to handle this task. Therefore, the third sub-factor also weighs against exercising jurisdiction.

Case: 6:13-cv-00222-DLB-HAI   Doc #: 134   Filed: 01/25/16   Page: 18 of 19 - Page ID#:
4833

In this case, each of the sub-factors point towards a Kentucky state court as the more appropriate forum. Accordingly, the fourth factor weighs heavily against exercising jurisdiction under Section 2201.

### e. *Is there an alternative remedy that is better or more effective?*

The final factor the Court must consider is "the availability of alternative remedies." *Scottsdale*, 513 F.3d at 561. If "an alternative remedy is better or more effective," a district court should "deny declaratory relief." *Grand Trunk*, 746 F.2d at 326. There are typically two alternative remedies for a federal declaratory plaintiff: (1) seek a declaratory judgment in Kentucky state court pursuant to Ky. Rev. Stat. Ann. § 418.040 or (2) file an indemnity action at the conclusion of the state court lawsuit. *See Scottsdale*, 513 F.3d at 562. To determine whether either of these remedies is "better or more effective," the Court's inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.*

In this case, Auto-Owners and Owners could have filed a declaratory action in Kentucky state court. This alternative likely would have been the better option. As discussed above, the Kentucky courts are in a superior position to resolve undecided or novel questions of state law and are better suited to apply public policy to insurance cases. While Auto-Owners and Owners could have filed an indemnity action, this option may not have been a better or more effective alternative for Auto-Owners and Owners. To take advantage of the indemnity remedy, Auto-Owners and Owners would have been required to join all underlying state actions. The insurance companies would then have to wait until the liability issues in each case were resolved before determining its obligations toward the Insured Defendants. "Such a delayed alternative would be worse, not better, than seeking

a federal declaratory judgment." *Scottsdale*, 513 F.3d at 562. Because a better or more effective alternative does exist, this final factor counsels against exercising jurisdiction in this case.

### 3. Balancing the Factors

The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced," but has advised that the factors are not equally weighted and their "relative weight" depends heavily on the "underlying considerations of efficiency, fairness, and federalism, "which will vary depending on the circumstances of each case. *Hoey*, 773 F.3d at 759. In this case, the first, fourth, and fifth factors weigh against exercising jurisdiction, while the second factor weighs in favor of exercising jurisdiction, and the third factor is effectively neutral. Keeping in mind the "underlying considerations of efficiency, fairness, and federalism," the Court finds it appropriate to decline jurisdiction in this matter.

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) The pending motions for summary judgment (Docs. # 88, 89, 90, 91, 92, 93, and 94) are **DENIED WITHOUT PREJUDICE**; and

(2) That this matter be, and is, hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 25th day of January, 2016.



Signed By:
*David L. Bunning* DB
United States District Judge

J:\DATA\ORDERS\London\2013\13-222 MOO.wpd